UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| KEITH COCKRELL, | : | Case No. 1:10-cv-270 |
| | : | |
| Plaintiff, | : | |
| | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| CITY OF CINCINNATI, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER THAT DEFENDANTS' MOTION TO DISMISS (Doc. 8) BE DENIED**

This civil action is currently before the Court on Defendants'[1] motion to dismiss

(Doc. 7) and Plaintiff's memorandum in opposition (Doc. 8). Defendants did not file a

reply memorandum.

I.        **FACTS ALLEGED BY THE PLAINTIFF**

For purposes of this motion to dismiss, the Court must: (1) view the complaint in

the light most favorable to the Plaintiff and (2) take all well-pleaded factual allegations as

true. *Tackett v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009); *Gunasekera v. Irwin*,

551 F.3d 461, 466 (6th Cir. 2009). The Plaintiff alleges as follows:

On July 3, 2008, Plaintiff was visiting with his girlfriend, Miranda Jones, at 4010

President Drive, an apartment unit in the Fay Apartment complex in Cincinnati, Ohio.

Plaintiff left Ms. Jones' apartment and crossed President Drive to borrow a pair of hair

---

[1] Defendants include the City of Cincinnati and Officer David Hall.

clippers from a friend who resided across the street. (Doc. 1; Doc. 8, Ex. 3 at ¶ 4). Ms. Jones was standing at her doorway and witnessed the events that followed. As Plaintiff approached his friend's door, a police cruiser arrived on the scene. Officer Hall exited the vehicle and began running toward Plaintiff. (Doc. 8, Ex. 3 at ¶ 6). Plaintiff then fled the scene. (Doc. 1). Officer Hall chased Plaintiff on foot for some distance, then deployed his taser in "probe" mode, causing Plaintiff to lose control of his body and crash into the pavement face first, unable to break his fall in any way. (*Id.*) Officer Hall allegedly suspected Plaintiff of jaywalking, then utilized his taser because of Plaintiff's flight. (Doc. 7 at 7).

Miranda Jones states that officers routinely patrol the Fay Apartment complex, that there is a police substation on the premises, and that many police cruisers arrived on the scene within moments of the use of force by Officer Hall. (Doc. 8, Ex. 3 at ¶¶ 11-12). Plaintiff was not carrying a weapon, and Officer Hall had no reason to suspect that Plaintiff was a threat to him or to anyone else. Plaintiff suffered serious lacerations and abrasions to his face, chest, arms, and elsewhere across his body. (Doc. 1 at ¶ 17; Doc. 8, Ex. 2).

The Cincinnati Taser policy, Cincinnati Police Department ("CPD") Procedure 1212.545, states that "[o]fficers should avoid using the X26 taser on obviously pregnant females and those individuals under the age of 7 or over the age of 70 due to the potential for these individuals to fall when incapacitated by the Taser, unless the encounter rises to

the level of a deadly force situation." CPD Procedures at 9.[2]

Plaintiff alleges one claim for excessive force pursuant to 42 U.S.C. § 1983.
Defendants have filed a motion to dismiss for failure to state a claim. (Doc. 7).
Specifically, Defendants claim that the taser use policy is not unconstitutional, and that
Officer Hall is entitled to qualified immunity because he did not violate Plaintiff's clearly
established constitutional rights. (*Id.*)

## II.  STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the
complaint. The purpose of a motion under 12(b)(6) is to test the sufficiency of the
complaint – not to decide the merits of the case. Rule 12(b)(6) permits dismissal of a
complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P
12(b)(6). The complaint must contain a "short and plain statement of the claim showing
that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The plaintiff's ground for relief
must entail more than "labels and conclusions, and a formulaic recitation of the elements
of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555
(2007).

The first step in testing the sufficiency of the complaint is to identify any
conclusory allegations. *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1950 (2009).
"Threadbare recitals of the elements of a cause of action, supported by mere conclusory

---

[2]  Available at: http://www.cincinnati-oh.gov/police/downloads/police_pdf33732.pdf .

statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555). That is, "a plaintiff's obligation to provide the grounds of [his] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. Although the court must accept well-pleaded factual allegations of the complaint as true for purposes of a motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949, 1950 (citing *Twombly*, 550 U.S. at 556, 570). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).

## III. ANALYSIS

Section 1983, Title 42 of the U.S. Code, permits any individual who is deprived of one of his federally protected rights by a state official to bring a civil claim for damages. To establish such a claim, a plaintiff must show that: (1) he was deprived of a right secured by the Constitution or federal law; and (2) the Defendants, acting under the color of law, caused the deprivation.[3] *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-157 (1978).

---

[3] Defendants stipulate that they acted under color of state law. (Doc. 7 at 3).

-4-

### A.  Excessive Use of Force by Officer Hall

The Supreme Court has identified several factors to assist the trier of fact in

determining whether the force used was reasonable: "the severity of the crime at issue,

whether the suspect poses an immediate threat to the safety of the officers or others, and

whether he is actively resisting or attempting to evade arrest by flight." *Graham v. Connor,*

490 U.S. 386, 388 (1989). "The calculus of reasonableness must embody allowance for the

fact that police officers are often forced to make split-second judgments – in circumstances

that are tense, uncertain and rapidly evolving – about the amount of force that is necessary

in a particular situation." *Id.* at 396-97. The *Graham* test presents factors for

consideration; it is not, however, a rigid and exclusive three-part test. *Ciminillo v.

Streicher*, 434 F.3d 466, 467 (6th Cir. 2006) ("Graham factors do not constitute an

exhaustive list," the ultimate question is whether seizure is justified under the totality of the

circumstances).

The Supreme Court has further clarified that the core inquiry is whether the force

used was "objectively reasonable." *Scott v. Harris*, 550 U.S. 372 (2007).  In *Scott*, the

Court held that it was not unreasonable for an officer to terminate a high speed chase by

attempting a "Precision Intervention Technique (PIT)."  A PIT maneuver is supposed to

cause the suspect vehicle to spin to a stop.  When Officer Scott applied his front bumper to

plaintiff Harris's rear bumper, Harris's car spun out of control, went down an embankment,

and Harris was rendered a paraplegic.  Harris argued that the force was unreasonable given

the fact that he was merely wanted for traffic violations.  The Supreme Court stated that the

underlying crime was only one fact in the equation.  The Court returned to balancing and

noted that:

> In determining the reasonableness of the manner in which a seizure
> is effected, "[w]e must balance the nature and quality of the intrusion
> on the individual's Fourth Amendment interests against the
> importance of the governmental interests alleged to justify the
> intrusion."

*Id*. at 383.  The Court proceeded to balance the interests in *Scott*, stating, "we must consider

the risk of bodily harm that Scott's actions posed to respondent in light of the threat to the

public that Scott was trying to eliminate."  *Id.*

The Sixth Circuit, interpreting *Scott*, added additional factors that may be relevant

when assessing whether force is reasonable, including the "size and stature of the parties

involved."  *Davenport v. Causey,* 521 F.3d 544, 551 (6th Cir. 2008).  Throughout all of

these decisions, the focus remains on determining reasonableness.  There is no "magical

on/off switch" for discovering when an officer's conduct is excessive.  *Id.*  Instead, "judges

are to look to the 'factual and practical considerations of everyday life on which reasonable

and prudent men, not legal technicians, act.'"  *Id*. (citing *Maryland v. Pringle,* 540 U.S.

366, 370 (2003)).

### 1.    Severity of the crime

First, Plaintiff claims that Officer Hall's use of his taser against someone fleeing

from a "nonviolent, minor pedestrian violation" constitutes excessive force.  Even

assuming Officer Hall did have reason to detain Plaintiff, the underlying offense was

jaywalking, one of the most minor offenses.[4] Defendant argues that by fleeing from a

police officer conducting a lawful investigation, Plaintiff elevated the situation from a

nonviolent, minor pedestrian violation to a misdemeanor of the second degree, and that his

flight caused Officer Hall to believe that he was guilty of something other than a pedestrian

violation, which weighs in favor of the taser deployment. *Illinois v. Wardlow*, 528 U.S.

119, 124 (2000) ("Headlong flight – wherever it occurs – is the consummate act of evasion:

it is not necessarily indicative of wrong doing, but it is certainly suggestive of such.").[5]

In a recent Sixth Circuit case, the Court held that "absent some compelling

justification, such as the potential escape of a dangerous criminal or the threat of immediate

harm," the use of a taser against a non-resistant person may be unreasonable. *Kijowski v.

City of Niles*, 372 Fed. Appx. 595, 600 (6th Cir. 2010).[6] In fact, the Ninth Circuit recently

---

[4] Jaywalking is a minor misdemeanor traffic ticket offense that would not even justify physical arrest. Ohio Rev. Code § 2935.26(A).

[5] Defendant does not offer any case law that supports the use of a taser in a nonviolent misdemeanor.

[6] The plaintiff in *Kijowski* was a guest at a wedding. The police were called after a fight erupted between the security guard, an off-duty police officer, and several wedding guests. The officer called for back-up. The responding police claimed that the plaintiff was extremely combative and was resisting arrest, thus necessitating the use of a Taser. *Id.* at 596. The plaintiff claimed that he was not involved in the fight, and that he never resisted, but rather was dragged out of a pick-up truck by the officers and tased twice. *Id.* at 597. The court determined that, construing the facts in a light most favorable to the plaintiff, there was not evidence that the plaintiff posed a threat to the officers or the public at any time. Therefore, the court noted that while the circumstances surrounding the incident created a "chaotic" situation, the use of force was unreasonable. *Id.* at 600.

-7-

held that tasers constitute a "greater intrusion than other forms of non-lethal force...We hold only that the X26 [taser] and similar devices constitute an intermediate, significant level of force that must be justified by a strong government interest [that] *compels* the employment of such force." *Bryan v. McPherson*, 608 F.3d 614, 622 (9th Cir. 2010). The Supreme Court has consistently held that where the underlying crime is only a nonviolent misdemeanor, a lesser degree of force is authorized. *Tennessee v. Garner*, 417 U.S. 1, 12 (1985) (excessive to shoot suspect fleeing from property crime). Moreover, the Supreme Court in *Garner* held that determining reasonableness under the circumstances is a constantly evolving legal issue. *Id.* at 13. What may have been perfectly reasonable many years ago may be deemed unreasonable now.

Defendants claim that Plaintiff's flight provides justification for the use of force because it could lead a reasonable officer to believe that Plaintiff had committed a more serious crime. However, according to the facts as alleged by Plaintiff, Officer Hall exited his vehicle and immediately began running toward Plaintiff without warning. *See* Section I, *supra*. While Plaintiff's decision to run may have been unwise, under the circumstances, it is not necessarily demonstrative of serious criminal activity. Accordingly, the first factor weighs in Plaintiff's favor.

### 2. Threat of safety to officers and others

Second, Plaintiff alleges that he did not possess or display a weapon and did not pose a physical threat toward Officer Hall or any other person. Plaintiff was unarmed,

-8-

shirtless, and running through a residential area. As Defendants concede, "this is not a case in which there was an obvious threat of harm to Officer Hall or others." (Doc. 7 at 8). There is no evidence that Officer Hall thought Plaintiff was a dangerous criminal or that he posed a threat of immediate harm. Accordingly, the second factor weighs in Plaintiff's favor.

### 3. Resisting arrest or evasion by flight

Defendants claim that the third *Graham* factor – actively resisting arrest or evading arrest by flight – clearly supports Officer Hall's decision to deploy his taser. Officer Hall maintains that he had three options. First, he could stop Plaintiff from fleeing with a single taser deployment. Alternatively, he could stop Plaintiff by tackling him.[7] Finally, Officer Hall could choose not to pursue Plaintiff, call for backup, and wait to see if Plaintiff was caught or if he would escape.[8] Because there is no question that Plaintiff did flee, this factor weighs in Officer Hall's favor. However, support for this factor is insufficient to outweigh the other two factors. The fact that Plaintiff fled from the minor crime may not well support the use of a taser when reviewed under the totality of the circumstances.

---

[7] While tackling Plaintiff might effectively stop him, Officer Hall alleges that he would still potentially have to struggle with Plaintiff to make him submit to arrest, and because of the weapons on Officer Hall's service belt, this hand-to-hand scenario is more dangerous and presents a greater likelihood of serious injury to both Plaintiff and Officer Hall. (Doc. 7 at 8).

[8] Defendants further argue that because Plaintiff's injuries from the fall were minor, Officer Hall's decision to deploy his Taser device to prevent Plaintiff's escape was objectively reasonable. However, Plaintiff alleges that his injuries were substantial, and the Court agrees. Plaintiff had serious lacerations and scrapes and now has permanent scars. *See* photos at Doc. 8, Ex. 2.

A reasonable jury, if it accepts Plaintiff's version of the events, could find that the decision by Officer Hall to use any force to effect the arrest violated the excessive force clause of the Fourth Amendment.

### 2. *Clearly Established Constitutional Right*

Once the defense of qualified immunity has been asserted, there is generally a two-step analysis to determine if the defendant is entitled to the defense. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001), *overruled in part by Pearson v. Callahan*, 129 S.Ct. 808 (2009). The first question to ask is, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. Then, once it is established that the officer's conduct violated some federally protected right, a court should proceed to ask "whether the right was clearly established." *Id.* Although this sequential analysis is not mandatory in all cases, it remains beneficial because "it often may be difficult to decide whether a right is clearly established without deciding precisely what the constitutional right happens to be." *Pearson*, 129 S.Ct. at 818 (citing *Lyons v. Xenia*, 417 F.3d 565, 581 (6th Cir. 2005)).

In *Caldwell v. Moore*, the Sixth Circuit held that "the use of a taser in order to avoid...the resort to even greater force [does] not violate clearly established law." *Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir. 1992). The court also determined that "the use of a taser is permissible when resort to even greater force may be necessary." *Id*.

> Because the focus is on whether the officer had fair notice that
> her conduct was unlawful, reasonableness is judged against the

-10-

> backdrop of the law at the time of the conduct. If the law at the
> time did not clearly establish that the officer's conduct would
> violate the Constitution, the officer should not be subject to
> liability or, indeed, even the burdens of litigation.

*Brosseau v. Haugen*, 543 U.S. 194 (2004).

Officer Hall argues that he used his taser to avoid resorting to even greater force

(*i.e.*, physically tackling Plaintiff, which would result in a hand-to-hand conflict), and that it

was not clearly established in July 2008 that a single deployment of the taser on a fleeing

suspect would violate the Constitution. Moreover, Officer Hall followed the Use of Force

policy of the Cincinnati Police Department which allowed "use of the Taser to stop persons

fleeing even though the persons are suspected only of nonviolent misdemeanors, including

pedestrian violations." (Doc. 1 at ¶ 13).

However, it need not be shown that the "very action in question" had previously

been held unlawful. Rather the actions of unlawfulness may be apparent from "direct

holdings, from specific examples described as prohibited, or from the general reasoning

that a court employs." *Kijowski*, 372 Fed. Appx. at 601. The Sixth Circuit, in *Kijowski*

(detailed *supra*), denied qualified immunity to the arresting officers.[9] The Court noted that

it had little difficulty in deciding that, even without specific knowledge that the use of the

taser under the circumstances would violate a constitutional right, the arresting officer

"should have known based on analogous cases that [his] actions were unreasonable." *Id.* at

---

[9] The incident in *Kijowski* occurred in 2006, well before the incident at issue here.

-11-

*5.

Courts in other jurisdictions have also denied qualified immunity to officers who deployed tasers on non-violent suspects. *See, e.g., Casey v. City of Federal Heights*, 509 F.3d 1278 (10th Cir. 2007) (denying qualified immunity to officer who tased non-violent misdemeanant without warning; incident occurred in 2003); *Orsak v. Metro. Airports Com'n Airport Police Dept.*, 675 F.Supp.2d 944 (D. Minn. 2009) (no qualified immunity for officers who tased individual who refused to comply with orders and began riding away on bicycle; incident occurred in 2006); *Cavanaugh v. Woods Cross City*, No. 1:08-cv-32, 2009 U.S. Dist. LEXIS 116214 (D. Utah 2009) (no qualified immunity for officers who used taser on potentially suicidal woman involved in domestic dispute where she walked "quickly" away from officers and toward home; use of taser without warning against misdemeanant violated clearly established law; incident occurred in 2006).

Importantly, the district court in *Orsak* noted, in denying summary judgment on the grounds of qualified immunity, that the "fact that tasers have become ubiquitous does not mean the device should be used routinely or indiscriminately." The court went on to caution that, "[g]iven the constitutional requirement that the use of force not be unreasonable, it is critical that the use of tasers be limited to situations in which officer safety is a legitimate concern." *Orsak*, 675 F.Supp.2d at 960.

Similarly, the Tenth Circuit, in *Casey v. City of Federal Heights*, determined that qualified immunity would not be extended to an officer who tased a misdemeanant without

-12-

warning. The plaintiff in *Casey* was attempting to pay a traffic fine at the municipal courthouse in August of 2003. He exited the building with a court file, which the court noted "may" have been a misdemeanor under state law, to retrieve money from his vehicle to pay the fine. 509 F.3d at 1279-80. An officer on the scene learned that the plaintiff had taken the file and confronted him. When the plaintiff attempted to step past the officer to return the file, the officer put him in an arm-lock and then jumped on his back. *Id.* A second officer arrived on the scene and, seeing that the first officer was tackling the plaintiff, tased the plaintiff immediately and without warning. *Id.* at 1280. The Tenth Circuit determined that such a use of force was unreasonable in light of the *Graham* factors. *Id.* at 1285. The court went on to deny qualified immunity to the tasing officer, holding that violation of the *Graham* reasonableness test was a violation of clearly established law. The court found important the defendant officer's concession that, at the time, she did not think the plaintiff "presented an immediate threat of death or serious injury to himself or others." *Id.* at 1286.

Similarly, in the instant case, Officer Hall conceded that Plaintiff did not pose a threat of immediate harm, yet he determined that the use of his taser was appropriate. Given the Fourth Amendment's requirement that officers weigh the government's interest in capturing a suspect against that suspect's Fourth Amendment interests, the Court finds that it was clearly established on July 3, 2008 that the use of a taser, against a fleeing jaywalker, *i.e.*, a non-violent misdemeanant who posed no threat of harm to anyone, was prohibited by the Constitution.

-13-

**B.    Excessive Force by the City of Cincinnati**

A municipal body may be liable for the unconstitutional acts of its officials where an

official policy was the moving force behind the violation.  *Monell v. Dep't of Social Servs.*

*of the City of New York*, 436 U.S. 658 (1978).  To impose liability on a failure to train

theory, the plaintiff must show that: (1) the defendant failed to adequately train its officials;

(2) that the failure constituted deliberate indifference to the rights of those likely to come

into contact with the officials; and (3) that such indifference was closely related to the

ultimate injury.  *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989).

Defendants assert that Plaintiff's claims should be dismissed because there is no

evidence of inadequate training or of an unconstitutional policy regarding taser use.

Specifically, Defendants maintain that Plaintiff has not provided specific examples of the

inadequacy of the City's training program regarding the authorized use of tasers.  Plaintiff

argues that it cannot present the specifics of the City's training program due to the early

stage of this litigation, but that discovery will allow Plaintiff to show more precisely how

the City's training program insufficiently addresses the risk of injury to victims of taser

deployment.  *See, e.g., Lott v. Swift Transp. Co. Inc.*, 694 F.Supp. 2d 923, 928 (W.D. Tenn.

2010) (plaintiff need not even point to a specific policy to meet the *Iqbal* pleading

standard); *Fletcher v. Michigan Dep't of Corr.*, No. 09-cv-13904, 2010 U.S. Dist. LEXIS

56757 at *5 (E.D. Mich. June 9, 2010) (plaintiff had alleged a sufficiently plausible claim

where he made general assertions that the department maintained "policies or customs" that "knowingly" permitted employees to violate the rights of "mental health inmates.").

While the specifics of the City's training program are not before this Court, it is clear from the express language of the official policy that officers are permitted to use tasers against individuals who are not suspected of a serious crime; who do not pose a threat of harm to anyone else; and who are tased in circumstances creating a heightened risk of serious injury or even death to the suspect.[10]  Police departments and other law enforcement agencies across the country have determined that the use of a taser against a non-violent suspect who is fleeing on foot creates a risk of serious injury and recommend that such use be prohibited or discouraged.[11]  Taser International, the manufacturer of the

_____

[10]  Available at: http://www.cincinnatioh.gov/police/downloads/police_pdf33732.pdf.

[11]  (Doc. 1 at 4, ¶15).  The United States Department of Justice and the Police Executive Research Forum also agree that the use of a taser against someone who is running presents a heightened risk of serious injury or death.  *See U.S. Dept. of Justice, Civil Rights Division Memo*, August 20, 2008; *Police Executive Research Forum*, PERF CED Policy and Training Considerations, October 25, 2005.  For example, in 2008 a 25-year old man in Charlotte, North Carolina fell while running from police after a Taser was deployed.  The man spent 4 days in the hospital suffering from a serious head injury.  Clay Barbour, *Police Use of Tasers on Rise*, Charlotte Observer, Thursday, August 21 2008.  In Harford County, Maryland, the sheriff's department used a Taser on a prisoner who was being combative.  The prisoner fell to the ground, striking his head on the floor.  The incident led to his death.  *See Harford County Sheriff's Office News Release*, June 13, 2009.  Similarly, a suspect who fell from a fire escape only ten feet from the ground was killed instantly when a Taser was used on him.  Kareem Fahim & Christine Hauser, "Taser Use in Man's Death Broke Rules, Police Say," New York Times, Sept. 25, 2008.  Included among these are: the Maryland Attorney General's Office, the Police Executive Research Forum, and the United States Department of Justice.  *Report of the Maryland Attorney General's Task Force on Electronic Weapons*, December 2009, available at: http://www.oag.state.md.us/reports/ECWReport.pdf ; *Conducted Energy Device Policy and Training Guidelines*, PERF Center on Force & Accountability, October 25, 2005; US Department of Justice Investigation Report, Orange County Sheriff's Office, August 20, 2008,

device in question, has also warned that the use of the device against individuals who are running can cause serious injury or death.[12]

The City's training program, as reflected by the official policy, permits officers to deploy the taser in these situations. Plaintiff maintains that the training is inadequate because it does not require the officers to balance the government's interest in seizing a fleeing person against the risk of serious injury as required by the Fourth Amendment. Based on the literature, case law, and even an explicit warning from the taser manufacturer, the high risk of serious injury or death was established and the City knew or should have known of that risk. However, the City continued to advise its officers that the use of the taser on a nonviolent fleeing misdemeanant was permissible. Consequently, Plaintiff has alleged sufficient facts to go forward on his claim that the City's policy, which explicitly permits such deployment, is unconstitutional on its face.

---

available at: http://www.justice.gov/crt/split/documents/orangecty_ta_ltr.pdf . Also critical of this use are Amnesty International, Stanford University, the Wisconsin Law Enforcement Standards Board, and the Braidwood Commission, appointed by the Canadian Government. *Less Than Lethal? The Use of Stun Weapons in US Law Enforcement*, Amnesty International, December 16, 2008, available at: http://www.amnesty.org/en/library/asset/AMR51/010/2008/en/530be6d6-437e-4c77-851b-9e581197ccf6/amr510102008en.pdf ; *Advisory Committee Recommendations for Training for Employment of an Electronic Control Device by Law Enforcement Officers in Wisconsin*, Wisconsin Department of Justice Law Enforcement Standards Board, June 7, 2005, available at: https://wilenet.org/html/taser/TSReport.pdf ; *Restoring Public Confidence: Restricting the Use of Conducted Energy Weapons in British Columbia*, Braidwood Commission Investigative Report, June 2009, available at: http://www.braidwoodinquiry.ca/report/P1Report.php.

[12] In April 2008, Taser International issued a product warning label specifically warning that tasers can cause "serious injury or death...Especially at risk are persons...who are running." (Doc. 1 at 3, ¶14). Taser International Law Enforcement Warnings at 3. Available at: http://www.taser.com/legal/Documents/Law-Enforcement-Warnings.pdf.

Moreover, Plaintiff maintains that in accordance with the Cincinnati Police Department's taser policy, Officer Hall used a taser against him – an individual with characteristics that made him susceptible to injury.  Plaintiff therefore has alleged facts sufficient to go forward on his claim that he suffered from an excessive use of force as a result of a custom of the improper use of tasers.

## IV.   CONCLUSION

Accordingly, based on the foregoing, Defendant's motion to dismiss (Doc. 8) is **DENIED**.

**IT IS SO ORDERED.**

Date: 11/24/10

Timothy S. Black
United States District Judge

-17-